1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                                     DISTRICT OF NEVADA

8                                            * * *

9   KAREN HANNA,                            )
                                            )
10                Plaintiff,                 )          3:06-CV-00680-LRH-RAM
                                            )
11   v.                                      )
                                            )          ORDER
12   REGIONAL TRANSPORTATION                 )
     COMMISSION,                             )
13                                           )
                  Defendant.                 )
14   _____)

15          Presently before the court is a motion for summary judgment (#11[1]) filed by Defendant

16   Regional Transportation Commission ("RTC").  Plaintiff Karen Hanna has filed a response (#14),

17   and Defendant replied (#18).

18   **I. Factual Background**

19          This controversy involves Defendant's decision to terminate Plaintiff as a temporary

20   employee and its decision not to hire Plaintiff for the position of Procurement and Compliance

21   Analyst.  In January 2004, Applied Staffing, a temporary agency, found Plaintiff a part-time

22   position in Defendant's finance department.  (Aff. of Karen Hanna (#15) at 2.)  Plaintiff worked in

23   this position as a temporary employee until July 2005, when Plaintiff's position was terminated.

24   (Def.'s Mot. for Summ. J. (#11) at 3.)  Plaintiff was sixty-one years of age at the time.  (*Id.* at 1.)

25

26   _____

        [1]Refers to court's docket

1  Plaintiff's duties included auditing certified payrolls, purchasing, making travel arrangements, and

2  administering the RTC's bus pass program.  (Aff. of Karen Hanna (#11 at 3.)

3      In May of 2005, Plaintiff learned Defendant was hiring for the position of Procurement and

4  Compliance Analyst.  (Dep. of Karen Hanna (#11), Ex. 1 at 92.)  The position involved duties

5  similar to those that Plaintiff was performing in her temporary position and Plaintiff applied for it.

6  (Aff. of Karen Hanna (#15) at 4.)

7      Unrelated to Plaintiff's application for the permanent analyst position, an incident occurred

8  on July 11, 2005,  between Plaintiff and Karen Heddy, a full-time RTC employee who Plaintiff

9  assisted.  In the incident, Plaintiff accused Heddy of pounding on Plaintiff's desk and swearing at

10  her over a controversy involving a stapler. (*Id*. at 4-5) After this incident, combined with several

11  other conflicts that had developed between Plaintiff and Heddy, Plaintiff concluded that she was

12  "experiencing a hostile work environment" and she reported this to her supervisor, Elisa Rizzo.

13  Rizzo reported Plaintiff's complaint to Steve Burlie, the head of RTC's Human Resources

14  Department and Burlie investigated.  He met with Plaintiff and determined that the "hostile

15  working environment" of which Plaintiff complained was based upon work-related conflicts and

16  disrespect for Heddy that Plaintiff had developed.  Burlie confirmed that the hostile work

17  environment of which Plaintiff complained had no relationship to any claims by Plaintiff of

18  discrimination based upon either age or gender.  After conferring with RTC supervisors and in a

19  memo to Plaintiff dated July18, Burlie summarized his investigation and advised Plaintiff of his

20  conclusion that the strained relations and interactions complained of by Plaintiff did not rise to the

21  level of a hostile work environment or violations of any RTC policies.  He encouraged Plaintiff to

22  "address the conduct that concerns you and to focus your discussion on how to work effectively

23  with Ms. Heddy."  (Ex. A to Decl. of Steve Burlie, #11-6.)

24      Shortly after receiving Burlie's memo, Plaintiff went to Burlie and gave him the names of

25  two employees, who Plaintiff stated were witnesses to the contended hostile relationship attributed

26

1  to Heddy.  (Aff. of Karen Hanna (#15) at 6.)  Burlie interviewed both of the identified employees.

2  However, each of them confirmed that they had not seen any of the alleged misconduct by Heddy

3  and that both of them had previously informed Plaintiff that they had not witnessed any

4  interactions showing misconduct by Heddy.  (Decl. of Steve Burlie (#11-6) at 3.)

5        After his interview of the two employees, Burlie conferred with Rizzo and met with

6  Plaintiff.  Burlie concluded that Plaintiff had made "contradictory and false statements, without

7  sufficient grounds in an effort to strengthen her claims against Heddy."  (Decl. of Steve Burlie

8  (#11-6) at 3.)  Plaintiff's misrepresentations were also discussed with the Director of the RTC

9  Finance Department, Tom Taelour.  (Decl. of Steve Burlie (#11-6) at 4.)  Thereafter, a decision

10  was made by the Acting Director for Taelour to contact Plaintiff's temporary employment agency

11  and terminate Plaintiff's assignment to RTC.  This occurred between July 19 and August 1, 2005.

12  This action was confirmed to Plaintiff in a letter to her by Burlie on August 1, 2005.  (Ex. B to

13  Decl. of Steve Burlie (#11-7).)

14        The Heddy incident and the termination of Plaintiff's employment relationship occurred

15  while Plaintiff's application for the Procurement and Compliance Analyst position was pending.

16  RTC received numerous applications and eleven applications, including Plaintiff's, were selected

17  as meeting minimum qualifications.  The applications were rated by Rizzo, who was the

18  Procurement and Compliance Administrator at RTC, and Carolyn Robinson, who was a Human

19  Resources Analyst.  Their ratings keyed upon job experience related to the position and they

20  planned to interview the top four applicants.  Rizzo's evaluation of the applicants was completed

21  sometime during the latter half of June, prior to the Heddy incident of July 11, 2005, and she rated

22  Plaintiff in the fifth position.  Robinson completed her rating in late July and also rated Plaintiff in

23  a fifth position.  On August 11, 2005, interviews were conducted of the three top candidates (the

24  fourth had withdrawn her application) and applicant Brad McKeachnie was recommended for the

25  position. (Decl. of Elisa Rizzo (#11), Ex. B at 5-6.)  Following a final interview with Finance

26

1  Director Taelour, the position was given to McKeachnie.  McKeachnie was 53 years old, although
2  his age was unknown at the time of his interviews.

3     On December13, 2006, Plaintiff filed suit alleging violations of the Age Discrimination in
4  Employment Act ("ADEA") under 29 U.S.C. § 623 and Title VII under 42 U.S.C. § 2000e.
5  (Compl. (#1) at 4.)  On November 20, 2007, Defendant filed the present motion for summary
6  judgment.

7  **II.  Legal Standard**

8     Summary judgment is only appropriate when "the pleadings, depositions, answers to
9  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
10  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of
11  law." Fed. R. Civ. P. 56(c).  In this process, the court must read the evidence and all reasonable
12  inferences that can be drawn from them in the light most favorable to the party opposing the
13  motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

14     The moving party bears the burden of informing the court of the basis for its motion, along
15  with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,
16  477 U.S. 317, 323 (1986).  The moving party must make a showing that is "sufficient for the court
17  to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v.*
18  *United States*, 799 F.2d 254, 259 (6th Cir. 1986).

19     In order to successfully rebut a motion for summary judgment, the non-moving party must
20  point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*
21  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might
22  affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
23  242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary
24  judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute
25  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
26

4

return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.  Discussion**

   **A.  Sex Discrimination**

      **1.  Standard**

Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a prima facie case of sex discrimination by demonstrating that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably."  *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000).

The degree of proof necessary to establish a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Id*. at 1124.  If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employment action.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.

If the defendant succeeds in articulating a legitimate, nondiscriminatory reason for the employment action, the plaintiff must have the opportunity to demonstrate that the employer's stated reason for the action is pretextual.  *See id.* at 804.  A plaintiff makes this showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

5

1                  **2. Plaintiff's Discharge and Failure to Hire Claims**

2         Defendant does not dispute that Plaintiff has established a prima facie case of sex

3 discrimination.  Consequently, the burden shifts to Defendant "to articulate a legitimate,

4 nondiscriminatory reason" for Plaintiff's discharge and rejection.  Defendant meets this burden.

5 Defendant has presented evidence that Plaintiff was terminated because she was a temporary

6 employee in a position set to be eliminated within two months (Decl. of Steve Burlie (#11), Ex. 7

7 at 4.), that supervisors were concerned that Plaintiff could not get along with Heddy, a permanent

8 employee whom Plaintiff was supposed to assist (*Id*.), and that Plaintiff had made "contradictory

9 and false statements, without sufficient grounds, in an effort to strengthen her claim against

10 Heddy." (*See id*. at 3.)  Defendant has thus articulated legitimate, nondiscriminatory reasons for

11 Plaintiff's discharge.

12         Defendant has also shown a legitimate, nondiscriminatory reason for not hiring Plaintiff as a

13 Procurement and Compliance Analyst. Supervisors decided to interview the top four candidates for

14 the position based on an objective rating system that keyed upon experience.  (Decl. of Elisa Rizzo

15 (#11), Ex. B at 3.)  Plaintiff was rated below the four candidates selected for interview.  (*See id*. at

16 4.)  Therefore, Defendant has established a nondiscriminatory reason for not hiring Plaintiff.

17         The burden thus shifts back to Plaintiff to show Defendant's proffered reason is pretextual.

18 Plaintiff argues that based on her education, work experience, and performance on the job at the

19 RTC, she was better qualified for the Procurement and Compliance Analyst position than

20 McKeachnie.  (Opp'n to Def.'s Mot. for Summ. J. (#14) at 7.)  Plaintiff further argues that there

21 was a pattern and practice of gender and age discrimination at the RTC.  (*See id*. at 9.)

22         Plaintiff's evidence fails to present a genuine issue as to whether Defendant's decision to

23 fire her and its failure to hire her were pretextual.  Plaintiff's assertion that "she has the potential

24 for producing witnesses situated similarly to herself, whose evidence would likely be admissible if

25 [Plaintiff's] case goes to trial" does not point to facts supported by the record and is purely

26

1   conclusory.  (*See* Opp'n to Def.'s Mot. for Summ. J. (#14) at 9.)   Plaintiff's testimony that other

2   women have left the RTC under adverse conditions or are in fear of losing their jobs is not

3   competent evidence of discriminatory conduct.  (*See* Aff. of Karen Hanna (#15) at 7.)  And while

4   Plaintiff testified at her deposition that Defendant discriminated against several women, Plaintiff's

5   assumption that there was a discriminatory "reason why all these women that are this age are

6   having trouble with the RTC" is insufficient to defeat a motion for summary judgment.  (*See* Dep.

7   of Karen Hanna (#11), Ex. 1 at 190); *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1103

8   (9th Cir. 2008) (holding that conclusory statements without factual support are insufficient to

9   defeat a motion for summary judgment).

10   In support of her failure to hire claim, Plaintiff offers her own testimony that her experience

11   at the RTC, her education, and her knowledge of certified payroll and purchasing shows that she

12   was a superior candidate, and thus Defendant's rationale for hiring McKeachnie was pretextual.

13   (*See* Aff. of Karen Hannah (#15) at 4, 6-7.)  The difficulty with Plaintiff's testimony is that it is

14   conclusory, lacks qualification and represents little more than a difference of opinion from those

15   who assessed the qualifications of the job applicants.

16   Plaintiff presents no evidence that the rating system used by the hiring supervisors was

17   designed to discriminate against women or that the system was misapplied in an effort to keep

18   Plaintiff out of the job.  Plaintiff is entitled to her opinion that she was more qualified than

19   McKeachnie, but that alone fails to show how Defendant's rationale for not hiring her was

20   discriminatory.

21   Likewise, Plaintiff's expert witness testimony does not create a genuine issue of fact

22   because it is based on the incorrect assumption that Plaintiff was already performing the same

23   duties as those posted for the permanent position.  (*See* Dep. of Lawrence P. Ball (#18), Ex. 1 at

24   33-34.)   Federal Rule of Evidence 702 states the following:

25   If scientific, technical, or other specialized knowledge will assist the trier of fact to
26   understand the evidence or to determine a fact in issue, a witness qualified as an expert

7

by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added).  Furthermore, "an expert must back up his opinion with specific facts.  The factual basis for the expert's opinion must be stated in the expert's affidavit and although the underlying factual details need not be disclosed in the affidavit, the underlying facts must exist."  *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 831-32 (9th Cir. 2001).  Plaintiff's expert testimony fails to meet the threshold Rule 702 requirement of assisting the trier of fact because it is based upon a false factual assumption vital to the conclusion Plaintiff was the most qualified applicant.  Plaintiff's expert concluded that Plaintiff was the second most qualified applicant for the Procurement and Compliance Analyst position based on his assessment of the candidate ratings from the applicants' experience summaries.  (*See* Dep. of Lawrence Ball (#18), Ex. 1 at 26-27.)  In arriving at his conclusions, the expert assumed that Plaintiff was performing all duties listed for the Procurement and Compliance Analyst position as advertised.  (*See id*. at 34.)  The expert explained in his report that "[t]he fact that [Plaintiff] has done the actual work for 1 ½ years as opposed to [McKeachnie's] having performed similar work should have been given heavy weight in the evaluation process."  (Report Regarding the Ranking of Candidates (#14), Ex. 1 at 3.)

However, Plaintiff admitted that she did not perform all duties of the Procurement and Compliance Analyst position.  (Dep. of Karen Hanna (#11), Ex. 1 at 96.)  For example, Plaintiff admitted that she did not have experience in state and federal civil rights programs or in labor standards while employed at the RTC.  (*Id*.)  Plaintiff also admitted that she had little experience in the qualification areas of minority business enterprises and women-owned business enterprises.  (*Id*. at 96-97.)  As Plaintiff's expert gave "heavy weight" to the incorrect assumption that Plaintiff was experienced in the duties of the advertised position, the expert testimony is inadmissible.

Finally, with regard to her claim of discriminatory termination, Plaintiff fails to rebut

1   Defendant's reasons for discharging her.  Defendant's supervisors reasonably questioned Plaintiff's

2   judgment after she identified witnesses to Heddy's alleged misconduct, who then denied

3   witnessing such activity.  Moreover, the two employees stated that they had told Plaintiff that they

4   had not witnessed harassment by Heddy shortly before she gave their names to Burlie.  (*See* Decl.

5   of Steve Burlie (#11), Ex. 7 at 4.)   RTC officers and supervisors legitimately concluded that such

6   conduct directly implicated whether Plaintiff should continue with Defendant in any employment

7   capacity.

8       **B.  Age Discrimination**

9          **1.  Standard**

10      Defendant also seeks summary judgment on Plaintiff's age discrimination claim.  Under the

11  ADEA, an employer may not "fail or refuse to hire or to discharge any individual or otherwise

12  discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

13  "Disparate treatment claims under the ADEA are analyzed by the same standard used to analyze

14  disparate treatment claims under Title VII."  *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir.

15  1991). Thus, to show age discrimination, a plaintiff must establish a prima facie case that (1) she

16  was a member in a protected class, (2) she was satisfactorily performing her job or was qualified

17  for hire, (3) she was terminated or rejected for employment, and (4) she was replaced by a

18  substantially younger person with equal or inferior qualifications.  *See Nidds v. Schindler Elevator

19  Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).

20          **2.  Plaintiff's Discharge and Failure to Hire Claims**

21      Defendant does not dispute whether Plaintiff has established a prima facie case of age

22  discrimination.  Consequently, Defendant must establish a legitimate, nondiscriminatory reason for

23  its actions.  Defendant meets this burden because it did not know the ages of the applicants.  (*See*

24  Decl. of Carolyn Robinson (#11), Ex. B at 3.)  Furthermore, as previously addressed, Defendant's

25  hiring supervisors confined their inquiries to experience-related objectives when they ranked the

26

9

job applicants.  (Declaration of Elisa Rizzo (#11), Ex. B at 3.)  Plaintiff simply failed to score high enough to obtain an interview and her low rating was unrelated to either age or gender.   (*Id*. at 4.) Parenthetically, the court notes that regardless of Plaintiff's job qualifications, Defendant could have lawfully chosen not to hire Plaintiff simply because of Plaintiff's workplace conflict with Heddy and Plaintiff's misrepresentations concerning two employee witnesses.

Regarding Plaintiff's discharge, Defendant shows that it terminated Plaintiff's temporary employment early because of her misrepresentations concerning the two contended employee witnesses.  (*Id*. at 4.)  Thus, Defendant establishes legitimate, nondiscriminatory reasons for discharging and rejecting Plaintiff.

Consequently, the burden shifts back to Plaintiff, who uses many of the same arguments for pretext as she did for her sex discrimination charge.  As with Plaintiff's sex discrimination arguments, Plaintiff's age discrimination arguments fail to show pretext.  Plaintiff's only evidence of age discrimination, is the assertion that McKeachnie was eight years younger than Plaintiff when Defendant hired McKeachnie.  (*See* Aff. of Karen Hanna (#15) at 6.)

However, Plaintiff "must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination."  *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). Plaintiff's arguments do not even address Defendant's nondiscriminatory and undisputed reasons for not hiring and firing Plaintiff.  The fatal flaw flowing throughout Plaintiff's case is that she has completely failed to prove through any kind of evidence that the nondiscriminatory actions shown by Defendant are pretextual.  Consequently, summary judgment is appropriate on Plaintiff's age discrimination claim.

**C.  Hostile Work Environment**

Plaintiff also brings a hostile work environment claim based on the ADEA and Title VII. Plaintiff contends that she experienced a hostile work environment because of co-worker Karen

10

Heddy's actions toward her.  (Compl. (#1) at 3.)  Defendant, in response, argues that the alleged conduct was not based on sex, was not severe or pervasive, and was little more than a workplace personality conflict developed largely by Plaintiff.

As stated above, under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Furthermore, under the ADEA, an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

Plaintiff's hostile work environment claim completely fails because the complained-of actions are not protected by either the ADEA or Title VII.  Plaintiff admits that Heddy did not take actions against her because of her age or sex (*see* Dep. of Karen Hanna (#11), Ex. 1 at 119-20), and Plaintiff has presented no other evidence that her gender or age were in any way the impetus of Heddy's actions.  Thus, even if Plaintiff's allegations concerning her work environment were true, she nonetheless is unable to establish a claim under Title VII or the ADEA.  Summary judgment in favor of Defendant on Plaintiff's hostile work environment claim is therefore warranted.

**D.  Retaliation**

Retaliation claims under Title VII and the ADEA utilize the *McDonnell Douglas* burden-shifting test.  *See Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1560 n.11 (9th Cir. 1994).  To make out a prima facie case under Title VII, Plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision."  *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004).  To show that Plaintiff engaged in a protected activity under the first element of a prima facie case, Plaintiff "must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII."  *Trent v. Valley Elec. Ass'n*, 41 F.3d 524, 526 (9th Cir. 1994).

11

1   Here, Plaintiff is unable to establish a prima facie case. Plaintiff admitted that Heddy's

2   alleged bullying, harassment, and assault were not premised on Plaintiff's sex. (*See* Dep. of Karen

3   Hanna (#11), Ex. 1 at 120.)  Consequently, when Plaintiff approached her supervisors about

4   Heddy, Plaintiff did not have a reasonable belief that her complaint was protected by Title VII, a

5   statute that, inter alia, protects individuals against employment actions based on gender or age.  As

6   Plaintiff is unable to demonstrate a prima facie case of retaliation under Title VII, there is no

7   genuine issue of material fact to preclude summary judgment on this claim.

8   **IV.  Conclusion**

9   Summary judgment is appropriate for each of the Plaintiff's claims because she failed to

10   establish a single genuine issue of material fact that would support any of her Title VII, ADEA or

11   retaliation claims.  Plaintiff's age discrimination and sex discrimination claims do not overcome

12   Defendant's motion for summary judgment, as Plaintiff does not present any reason to disbelieve

13   Defendant's legitimate, nondiscriminatory reasons for its employment actions.  Plaintiff's hostile

14   work environment and retaliation claims are without merit because Title VII and the ADEA do not

15   protect Plaintiff from the types of acts she complains of.  Therefore, Defendant has succeeded in

16   showing that it is entitled to judgment as a matter of law.

17   IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (#11) is

18   GRANTED.  The Clerk of the Court shall enter judgment accordingly.

19   IT IS SO ORDERED.

20   DATED this 21st day of July, 2008.

21

22   _____
    LARRY R. HICKS
    UNITED STATES DISTRICT JUDGE

23

24

25

26

12